## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Eira Martínez-Maldonado and Stiffen Huertas-Ortiz, both personally and on behalf of their minor son, DHM, | Case No. 24-cv-1367 |
| Plaintiffs, | |
| v. | Preliminary and Permanent Injunctive Relief, Civil Rights, Special Education, Judicial Review, Declaratory Judgment, Attorney's Fees & Costs |
| Department of Education of Puerto Rico; and the Commonwealth of Puerto Rico, | |
| Defendants. | |

## VERIFIED COMPLAINT FOR JUDICIAL REVIEW

**TO THE HONORABLE COURT:**

**NOW COME** plaintiffs**,** through their undersigned attorney, and very respectfully state, allege and pray as follows:

### I.    INTRODUCTION

1.    This is a civil action brought by Mrs. Eira Martínez-Maldonado and Mr. Stiffen Huertas-Ortiz, personally and on behalf of their minor son DHM, for preliminary and permanent injunctive relief, declaratory judgment, and for judicial review of the resolution issued by a Hearing Officer ("HO") on July 30, 2024 in a special education due process complaint filed against the Department of Education of Puerto Rico (PRDOE) by minor student DHM pursuant to the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*

2.    This action arises under the IDEA which provides jurisdiction to a federal district court for judicial review of an administrative official's decision, and to award any remedy that is deemed just and proper on claims for educational and related services under the federal statute.

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

See 20 U.S.C. §§ 1403 and 1415(i)(2)-(3). See also 34 C.F.R. §§ 300.516-517.

3.    Preliminary and permanent injunctive relief against defendants is also sought for defendants' refusal to provide DHM with a free appropriate public education for the 2023-2024 and current 2024-2025 school years, as required by the IDEA and relevant state law. Specifically, the PRDOE is currently depriving DHM of his right to a free appropriate public education by not providing an educational placement in the least restrictive environment and depriving him of an education altogether since the beginning of the current 2024-2025 school year due to the agency's failure to assign a special education teacher for the full-time special education classroom were DHM is currently placed during the pendency of this litigation pursuant to IDEA's stay put provision.

## II.    JURISDICTION AND VENUE

4.    Jurisdiction is conferred on this Court by 20 U.S.C. §§ 1403, 1415 (i)(2)(A) and (i)(3)(A), 28 U.S.C. §§ 1331, 1343 (a)(4), 2201 and 1441. See also 34 C.F.R. §§ 300.516-17.

5.    Venue is proper in this District Court pursuant to 28 U.S.C. § 1391, since the events giving rise to this claim occurred in this district, and all parties are residents of the Commonwealth of Puerto Rico.

6.    Supplementary claims are raised under local law for the education of individuals with disabilities, 18 Laws of P.R. Ann. §§ 1351 *et seq.* ("Law 51"), and the local law Bill of Rights for the Individuals with Disabilities, 1 Laws of P.R. Ann. § 512.

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

### III.    PARTIES

7.    Plaintiffs Mrs. Eira Martínez-Maldonado and Mr. Stiffen Huertas-Ortiz are the parents and legal guardians of minor DHM. See **Exhibit 1,** Unsworn Statement under Penalty of Perjury signed by Mrs. Eira Martínez-Maldonado and Mr. Stiffen Huertas-Ortiz on August 16, 2024.

8.    Mrs. Martínez and Mr. Huertas reside with their children in the Municipality of Vega Alta, Puerto Rico, with physical address at Barrio Sábana Hoyos, Buzón 6989, Vega Alta, PR 00692 and postal address HC-83 Bzn 6989, Vega Alta, PR 00692, mobile phone numbers 787-208-9894    and    939-245-5093,    and    emails    eirajanice6@gmail.com    and stiffenhuertasortiz@gmail.com.

9.    Co-plaintiff DHM is a five (5) year old boy born on August 28, 2018 who is diagnosed with severe autism (level 3) and attention deficit hyperactivity disorder (ADHD).

10.    DHM is registered and eligible to the Special Education Program administered by the Department of Education of Puerto Rico (PRDOE) as a child with disabilities with student identification number (SIE) 35279035.

11.    As an individual with disabilities, DHM is qualified by federal and state law to participate in the academic program of the public education system administered by the PRDOE.

12.    Plaintiffs very respectfully request that this Honorable Court reviews and reverses the resolution issued in administrative case number QEE-2324-04-04-01353 by HO Wilmarie Santoni-Cruz on July 30, 2024, as contrary to IDEA, state law and regulations, as interpreted by the United States Supreme Court, First Circuit Court of Appeals and other federal courts.

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

13.     Plaintiffs respectfully request that this Honorable Court reverse the HO's resolution and order defendants to provide the special education services and private educational placement at public cost that plaintiffs contend that DHM is entitled to under the IDEA, and that was denied by the HO in case number QEE-2324-04-04-01353.

14.     Pursuant to IDEA's section 1415(i)(3)(B), 20 U.S.C. § 1415(i)(3)(B), attorney's fees and costs are requested since plaintiffs emerged as partially prevailing parties on judicial review and, if the resolution is reversed in judicial review, then plaintiffs are entitled to the total attorneys and costs incurred in both actions.

15.     The Commonwealth of Puerto Rico is included as co-defendant due to the PRDOE's lack of capacity to sue and be sued.

16.     The Commonwealth of Puerto Rico physical address is that of its Department of Justice, located in Olimpo Street, Axtmayer Corner, Stop 11, San Juan, Puerto Rico, and its postal address is P.O. Box 9020192, San Juan, Puerto Rico 00902-0192.

17.     The Department of Education is an agency of the Commonwealth of Puerto Rico responsible for providing and administering the public education system in the Commonwealth of Puerto Rico.

18.     The physical address of the PRDOE is Urbanización Industrial Tres Monjitas, Avenida Teniente César González, Esquina Calaf, Hato Rey, Puerto Rico, 00919, and the postal address is P.O. Box 190759, San Juan, Puerto Rico 00919-0759.

19.     As a recipient of federal funding, the PRDOE is responsible for providing a free appropriate public education suited to DHM's needs as a student with disabilities.

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

## IV.    FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

20.    As previously mentioned, DHM is a child with disabilities diagnosed with level 3 autism.

21.    As a result of his condition, DHM's individual needs require multiple accommodations and special education services to be able to receive a free appropriate public education ("FAPE"), as mandated by IDEA's section 1412(a)(1). See 20 U.S.C. § 1412(a)(1). See also 20 U.S.C. § 1401(9) (IDEA's definition of FAPE).

22.    As the HO concluded in the resolution under review, the PRDOE denied DHM's right to a FAPE during the previous 2023-2024 school year.

23.    The PRDOE also denied DHM's right to a FAPE for the current 2024-2025 school year due, among other reasons, to its failure to assess DHM in a timely manner in all areas of suspected disability, failed to prepare an adequate individualized education plan ("IEP") in a timely manner, failed to address and remediate his severe academic regression due to the agency's FAPE denial during the previous 2023-2024 school year, failed to allow DHM's parents a meaningful participation in the IEP team meetings and in the preparation of the 2024-2025 IEP and the educational placement decision, predetermined DHM's educational placement for the 2024-2025 school year, and failed to comply with numerous procedural safeguards set forth in IDEA.

24.    These severe violations of IDEA's procedural and substantive requirements led the PRDOE to fail to provide DHM in a timely manner with an adequately developed IEP and educational placement alternative for the 2024-2025 school year prior to the state deadline that

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

expired on May 31, 2024 (five days prior to the conclusion of the 2023-2024). See Judgment issued

on February 14, 2002, Rosa Lydia Vélez, et al. v. Aponte-Roque, et al., Case No. KPE 80-1738

(907) (February 14, 2002) at 31, section D(2). See also PRDOE Manual of Special Education

Procedures, July 2020 Edition, at 73, section 7.4(2).

25.     DHM attended the 2023-2024 school year in the PRDOE's Elemental Urbana

elementary school, where he was placed in a full-time special education classroom identified as

SEM routes 2 and 3 by the PRDOE.

26.     The Elemental Urbana elementary school is in the Municipality of Vega Alta and

is owned and administered by the PRDOE.

27.     Without affording plaintiffs prior written notice, the PRDOE held an IEP team

meeting on May 16, 2024 that was not adequately constituted because it lacked a statutory

participant, the duly authorized representative from the PRDOE. See 20 U.S.C. §

1414(d)(1)(B)(iv).

28.     The PRDOE did not send prior written notification of the proposed 2024-2025 IEP

for DHM before the May 16, 2024 IEP team meeting.

29.     Mrs. Martínez refused to sign the minutes of the May 16, 2024 IEP team meeting

that same day because she wanted to review them in detail and consult with her counsel.

30.     From the day after and until May 23, 2024, DHM's then interim special education

teacher, Mrs. Mayra Morales-Bardeguez, continued to pressure and insist that Mrs. Martínez sign

the May 16, 2024 IEP team meeting minutes and the proposed 2024-2025 IEP.

31.     The constant pressure and insistence of Mrs. Morales was unbearable to DHM's

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

mother, who on May 23, 2024 gave in and, overwhelmed by the extreme pressure and duress that she had been subjected to by Mrs. Morales, signed the proposed 2024-2025 IEP and the May 16, 2024 IEP team meeting minutes, as submitted by the PRDOE.

32.    However, that same day Mrs. Martínez sent two email communications to the PRDOE individually requesting several amendments and corrections to each of the proposed 2024-2025 IEP and the May 16, 2024 IEP team meeting minutes. See Exhibit 8 of the administrative trial, email sent by Mrs. Martínez to the PRDOE on May 23, 2024 at 1:15pm; Exhibit 9 of the administrative trial, email sent by Mrs. Martínez to the PRDOE on May 23, 2024 at 1:08pm.

33.    Mrs. Eira Martínez sent an email communication to the PRDOE on May 30, 2024, revoking her signature of DHM's 2024-2025 IEP due to lack of consent and to her multiple amendments requested by her to the IEP and meeting minutes via email dated May 23, 2024 which had been ignored by the PRDOE. See Identification 2 of the administrative trial, email sent by Mrs. Martínez to the PRDOE on May 30, 2024. See also 34 C.F.R. § 300.9 (IDEA regulation allowing for a parent to revoke consent and stating that revocation is not retroactive), 300.300(b)(4) (stating the consequences of the parents revoking consent in writing for the continued provision of special education and related services).

34.    Pursuant to section 300.9 of IDEA's regulations, DHM's 2024-2025 IEP was null and void and became ineffective once Mrs. Martínez revoked her consent and informed it to the PRDOE via email. Id.

35.    However, plaintiffs contest that DHM's 2024-2025 IEP was null and void from the beginning since it lacked the informed consent required by IDEA's section 1414(a)(1)(D)(i)(II),

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

and because it was prepared by an improperly constituted IEP team without DHM's parents' meaningful participation, and in violation of IDEA's prior-written notice requirement. See 20 U.S.C. § 1414(a)(1)(D)(i)(II) (informed consent), 1414(d)(1)(B)(iv) (statutory IEP team participants), 1415(c)(1) (prior written notice requirements), 34 C.F.R. § 300.322 (meaningful parent participation requirement). See also Spielberg v. Henrico County Public Schools, 853 F.2d 256, 259 (4th Cir. 1988) (recognizing that "the EHA [IDEA predecessor statute] … emphasizes parental involvement. After the fact involvement is not enough.") (our emphasis).

36.     The 2024-2025 IEP signed by Mrs. Martínez on May 23, 2024 is not appropriate for DHM because, among other deficiencies, it failed to recognize and address DHM's severe academic regression caused by the PRDOE's FAPE denial during the previous year and his then current level of academic progress, failed to integrate the results of the autism, psychometric and socioemotional assessments previously performed to DHM, failed to modify the goals of all areas of the academic plan (Spanish and math) and make them measurable, failed to specify all the accommodations, related and supplemental services that DHM needed and had been recommended to him in his recent assessments, failed to recognize that DHM needed to be assessed in assistive technology, and was drafted by the PRDOE without the meaningful participation of DHM's parents. See Exhibit 8 of the administrative trial, email sent by Mrs. Martínez to the PRDOE on May 23, 2024 stating her objections to DHM's 2024-2025 IEP and requesting multiple revisions, amendments and updates.

37.     DHM's lack of progress and regression during the 2023-2024 school year in the SEM Routes 2 and 3 group at the PRDOE's Elemental Urbana School in Vega Alta was

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

corroborated not only by the testimony of Mrs. Martínez and psychologists Migdalia Santos and

Nannette Negrón, but is also clearly demonstrated by the 40-week progress report issued by the

PRDOE to DHM on May 13, 2024, which was submitted and admitted as Exhibit 7 during the

administrative trial. See 20 U.S.C. § 1414(d)(1)(A)(i)(III) (IDEA provision requiring "a

description of how the child's progress toward meeting the annual goals described in subclause

(II) will be measured and when periodic reports on the progress the child is making toward meeting

the annual goals (such as through the use of quarterly or other periodic reports, concurrent with

the issuance of report cards) will be provided").

38.     The 40-week progress report issued by the PRDOE to DHM on May 13, 2024,

indicates that DHM concluded the 2023-2024 academic year with a total score of 44%, or 94 out

of 214 possible points, and failed to achieve any measurable progress in most of the specified goals

across all disciplines. See Exhibit 7 of the administrative trial.

39.     The PRDOE ignored the email sent by Mrs. Martínez to the PRDOE on May 23,

2024 stating her objections to DHM's 2024-2025 IEP and requesting multiple revisions,

amendments and updates.

40.     As a result of the PRDOE's failure to have an adequate IEP in effect and to address

his behavioral issues due to his severe autism and ADHD conditions, DHM was on more than one

occasion tied to his chair by his interim special education teacher, Mrs. Morales-Bardeguez,

without the permission or consent of DHM's parents.

41.     The Office of Civil Rights (OCR) and U.S. Department of Education have issued

guidance emphasizing that the use of restraint and seclusion must comply with civil rights laws,

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

and use of restraint may violate a child's rights under IDEA. <u>See</u>, <u>e.g.</u>, https://www.ed.gov/news/press-releases/us-department-education-office-civil-rights-resolves-restraint-and-seclusion-compliance-review-denton-independent-school-district-texas. <u>See</u> <u>also</u> IDEA's discipline provisions at 20 U.S.C. § 1415(k), 34 C.F.R. § 300.530.

42.     The improper restraint events of DHM during the 2023-2024 school year were expressly alleged in pages 6 and 7, paragraphs 34 and 36, of the administrative due process complaint filed on April 10, 2024 in case number QEE-2324-04-04-01353, yet the HO failed to address or even mention in the resolution under review.

43.     The PRDOE failed to amend the 2024-2025 IEP signed under duress by Mrs. Martínez on May 23, 2024.

44.     The 2024-2025 IEP signed under duress by Mrs. Martínez on May 23, 2024 was defective, among other reasons, because it failed to address and state his current level of academic performance, needs, the educational placement in the LRE, and included boiler plate measurable goals that were not leveled and individualized to DHM's needs and unbeknownst level of academic performance, and were therefore too ambitious and unattainable in light of his lack of progress, academic and emotional regression and the fact that he had not been able to attain the goals of the previous IEP.

45.     Simply put, the 2024-2025 IEP signed under duress by Mrs. Martínez on May 23, 2024 was a mere form document made in a hurry by agency personnel using the agency's standard goals without consideration of DHM's unique needs, diagnoses, recent assessment results, and level of academic performance, and was therefore in violation of IDEA by not being "reasonably

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

calculated to enable [DHM] to make progress appropriate in light of [her] circumstances," <u>Endrew F. v. Douglas County Sch. Dist. Re-1</u>, 580 U.S. 386, 403 (2017)

46.     The official 2023-2024 school year of the PRDOE concluded on June 7, 2024.

47.     Due to the HO's denial of DHM's private placement cause of action in the underlying administrative case, DHM is currently staying put in the Elemental Urbana elementary school for the 2024-2025 school year.

48.     Due to the HO's denial of DHM's private placement cause of action in the underlying administrative case, DHM is currently placed in the same full-time special education classroom identified as SEM routes 2 and 3 by the PRDOE where he was placed and attended to last year.

49.     The official 2024-2025 school year of the PRDOE commenced on August 12, 2024.

50.     Without affording plaintiffs prior written notice, the PRDOE held an IEP team meeting on June 20, 2024 via videoconference using the agency's Microsoft Teams platform.

51.     The purpose of the June 20, 2024 IEP team meeting was to discuss the psychometric and socioemotional assessment reports that had been issued to DHM on June 6, 2024 by Dr. Nannette Negrón, psychologist with license number 5505 certified in neuropsychology, neuroscience, autism and assistive technology, and to discuss and reach an agreement as to the educational placement of DHM for the 2024-2025 school year.

52.     The minutes of the June 20, 2024 IEP team meeting was admitted into evidence by the HO and marked as Exhibit 5.

53.     By June 20, 2024, the May 31, 2024 cutoff date established in local law for having

11

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

an adequate 2024-2025 IEP signed and in effect, and for the identification and offer of a school

setting in the least restrictive environment for DHM were such IEP could be implemented, had

expired.

54.    Contrary to IDEA's minimum personnel requirements, DHM's special education

teacher was not present at the June 20, 2024 IEP team meeting. See 20 U.S.C. § 1414(d)(1)(B)(iv).

55.    Without affording DHM's mother a meaningful participation, the PRDOE, thru its

Special Education Facilitator Mr. Lino Elías, predetermined DHM's educational placement for the

2024-2025 school year in the June 20, 2024 IEP team meeting.

56.    The educational placement recommended to DHM for the 2024-2025 school year

by psychologist Dr. Nannette Negrón on the psychometric and socioemotional assessment reports

was for a special education classroom with level or grade promotion with a maximum of 4 students

and with one-on-one education for the Spanish, math and sciences classes. See Exhibit 4 of the

administrative trial, psychometric evaluation report issued to DHM by Dr. Negrón on June 7, 2024,

at page 9.

57.    The educational placement recommended to DHM for the 2024-2025 school year

by psychologist Dr. Negrón is in line and complies with the IDEA least restrictive environment

(LRE) requirement for enabling him to be involved to the maximum extent possible with children

who are not disabled and to participate in and make progress in as close as possible to the general

education curriculum. See 20 U.S.C. § 1412(a)(5)(A) (LRE definition), 34 C.F.R. § 300.114 (LRE

requirements).

58.    DHM's parents were in full agreement with the contents of the socioemotional and

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

psychometric evaluation reports issued to DHM by Dr. Negrón on June 6 and 7, 2024, and requested the June 20, 2024 IEP team members to fully accept and integrate the results and recommendations of both reports to DHM's 2024-2025 IEP that had been unduly prepared and whose signature had been revoked.

59.    Against DHM's wishes and with her objection, the PRDOE personnel that participated in the unduly constituted June 20, 2024 IEP team meeting decided to partially approve and reject the socioemotional and psychometric evaluation reports issued to DHM by Dr. Negrón on June 6 and 7, 2024.

60.    The only part of the socioemotional and psychometric evaluation reports issued to DHM by Dr. Negrón on June 6 and 7, 2024 that were rejected by the PRDOE personnel that participated in the June 20, 2024 IEP team meeting was the educational placement recommendation without having a valid 2024-2025 IEP in place and/or updating it to integrate the assessments results and recommendations and/or preparing an adequate educational program with measurable objectives and annual goals.

61.    By unilaterally rejecting the educational placement recommendation issued by Dr. Negrón without allowing DHM's mother a meaningful participation or contacting Dr. Negrón and allowing the specialist to explain and defend her placement recommendation, the PRDOE predetermined DHM's educational placement for the 2024-2025 school year.

62.    To make matters worse, the PRDOE predetermined DHM's educational placement for the 2024-2025 school year without having a valid and IDEA-compliant 2024-2025 IEP in place. See 34 C.F.R. § 300.116(b) (IDEA requirement for the educational placement to be "(1)

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

determined at least annually; (2) is based on the child's Individualized Education Program (IEP); and (3) is as close as possible to the child's home.")(emphasis added).

63.     The PRDOE predetermined DHM's educational placement for the 2024-2025 school year disregarding IDEA's least restrictive environment requirements, disregarding the input and desire of DHM's parents' and without their meaningful participation, disregarding the placement recommendations issued by DHM's psychologists doctors Migdalia Santos (autism report) and Nannette Negrón (psychometric and socioemotional reports), and without the input of the statutory required "individuals who are knowledgeable about the child", such as DHM's special education teachers and psychologists. See 34 C.F.R. § 300.116(a) (IDEA requirement for the educational placement decision "(1) is made by a group of persons, including the parents, and other persons knowledgeable about the child, the meaning of the evaluation data, and the placement options; and (2) is made in conformity with the LRE provisions.") (emphasis added).

64.     None of the participants of the June 20, 2024 IEP team meeting had taught DHM or had any personal knowledge of his then current level of academic achievement, needs and/or level of regression.

65.     The PRDOE's Special Education Facilitator, Mr. Lino Elías, had never seen, supervised or in any way had any direct contact with DHM prior to the June 20, 2024 IEP team meeting.

66.     Mr. Elías did not interview nor obtained the input from DHM's special education teachers prior to the June 20, 2024 IEP team meeting.

67.     Mr. Elías did not communicate with nor obtain the input from Dr. Nannette Negrón

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

prior to, during or after the June 20, 2024 IEP team meeting.

68.    Mrs. Martínez' concerns and pleads for more information to identify the least restrictive environment educational placement for DHM were noted and the June 20, 2024 IEP team meeting participants recognized that the 2024-2025 IEP had still not been revised, updated and that there were assessments still pending to evaluate DHM in all areas of suspected disability.

69.    The PRDOE also declined to consider Mrs. Martínez' concerns regarding DHM's educational placement for the 2024-2025 school year, DHM's emotional distress and apprehension to assisting to school, his severe regression due to the agency's FAPE denial during the previous year, although the agency was fully aware such concerns were supported by his underachievement and his evident emotional and functional regression and lack of progress.

70.    In addition to his well-documented regression and lack of progress at school during the 2023-24 school year, the PRDOE knew that DHM had several evaluations that were pending and that needed to be performed.

71.    The June 20, 2024 IEP team failed to develop an appropriate IEP for the 2024-2025 school year.

72.    The results and recommendations made in the socioemotional and psychometric evaluation reports issued to DHM by Dr. Negrón on June 6 and 7, 2024 that were approved by the June 20, 2024 IEP team were never incorporated or in any other way made part an IEP.

73.    Without an appropriate IEP for the 2024-2025 school year, without Mrs. Martínez a meaningful participation, and over her objections and refusal, and without the participation and/or input of DHM's special education teacher and psychologist Dr. Negrón, the PRDOE

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

personnel that participated in the June 20, 2024 IEP team concluded that DHM's educational placement for the 2024-2025 would continue to be the same as the previous year (where the HO found that DHM had been denied a FAPE), namely a full time special education classroom classified by the PRDOE as SEM routes 2 and 3.

74.    The full-time special education classroom classified by the PRDOE as SEM routes 2 and 3 is more restrictive than the educational placement recommended to DHM by psychologist Dr. Negrón for a special education classroom with level or grade promotion with a maximum of 4 students and with one-on-one education for the Spanish, math and sciences classes.

75.    The full-time special education classroom classified by the PRDOE as SEM routes 2 and 3 does not have level or grade promotion and does not allow access to the general education curriculum.

76.    The full-time special education classroom classified by the PRDOE as SEM routes 2 and 3 includes students with conditions and disabilities more severe that DHM's and with differing ages.

77.    The full-time special education classroom classified by the PRDOE as SEM routes 2 and 3 in the Elemental Urbana school does not have a substitute special education teacher and cannot assure that DHM be provided with the minimum 6-hours daily education time recommended to DHM by his specialists and by the American Association of Pediatrics.

78.    This educational placement determination was made exclusively by PRDOE personnel without a valid 2024-2025 IEP and without any consideration to IDEA's LRE requirements, without prior written notice to plaintiffs and without Mrs. Martínez meaningful

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

participation, input and informed consent.

79.     The prompt holding of a duly constituted IEP team meeting to discuss and implement the outstanding evaluations and for the preparation of an IDEA compliant 2024-2025 IEP were the second and fourth remedies sought in the administrative due process complaint and were incorrectly labeled as "resolved" or "partially resolved" by the HO in the resolution under review, therefore depriving plaintiffs of their right to obtain a determination on whether DHM had been afforded a FAPE for the 2024-2025 school year as per IDEA's section 1415(f)(3)(E) .

80.     The PRDOE's complete failure and disregard of DHM's procedural safeguards and right to prior written notice, the agency's failure to have both the IEP and the placement decisions made by the state law deadline that expired on May 31, 2024, the predetermination and lack of meaningful participation by DHM's parents in the educational placement decision made exclusively by PRDOE personnel in the June 20, 2024 IEP team meeting, his individual needs and current level of academic functional level and disregarding IDEA's LRE requirements, among other shortcomings, resulted in the denial of DHM's right to FAPE for the 2024-2025 school year.

81.     Against DHM's wishes and with her objection, the PRDOE personnel that participated in the June 20, 2024 IEP team meeting made two public school offerings in the Jacinto López Martínez School in the Municipality of Dorado and the Antonio Vélez Alvarado School in the Municipality of Manatí.

82.     Both schools supposedly had full-time special education classrooms classified by the PRDOE as SEM routes 2 and 3 available for DHM for the 2024-2025 school year.

83.     The PRDOE also breached its locally adopted procedures by failing to submit

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

plaintiffs, during or after the June 20, 2024 IEP team meeting, with the agency's SAEE-04, and/or

SAEE-07 a and b forms regarding the school setting identification and alternatives for the 2024-

2025 school year.

84.    The PRDOE's failure to issue plaintiffs prior written notice of the educational

placement and/or school alternatives available for DHM prior to the state law May 31, 2024

deadline resulted in a FAPE deprivation by leaving him devoid of a least restrictive environment

and placement for the 2024-2025 school year.

85.    Although not having a valid IEP or having received formal placement offers,

DHM's mother visited on the 7th and 8th days of August 2024 the Jacinto López Martínez School

in the Municipality of Dorado and the Antonio Vélez Alvarado School in the Municipality of

Manatí prior to the commencement of the 2024-2025 school year.

86.    The Jacinto López Martínez School in the Municipality of Dorado confirmed that

it had a SEM routes 2 and 3 classroom available for the 2024-2025 school year but informed that

it did not have the related and supplemental services that DHM needed as per his 2023-24 and

2024-25 IEPs.

87.    The Antonio Vélez Alvarado School in the Municipality of Manatí informed that

its SEM routes 2 and 3 classroom was full and therefore unavailable for the 2024-2025 school

year.

88.    Due exclusively to the PRDOE's multiple severe procedural violations of IDEA's

sections 1414 and 1415, DHM was not provided with an IDEA compliant IEP nor offered

placement in the least restrictive environment (LRE) for the 2024-2025 school year.

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

89.    In the absence of an adequate IEP, LRE and proper placement determination, DHM is currently in stay put attending a SEM routes 2 and 3 classroom in the Elemental Urbana public school for the 2024-2025 school year.

90.    To plaintiffs' complete dismay and frustration, as of the filing date of this complaint the SEM routes 2 and 3 classroom in the Elemental Urbana public school were DHM is currently enrolled has not been able to commence classes because of the PRDOE has not assigned a special education teacher for DHM's classroom.

91.    Consequently, DHM commenced the 2024-2025 school year without being able to attend school exclusively due to the PRDOE's shortcomings and failure to provide him with a FAPE.

92.    These are the same problems that caused DHM to miss most of his 2023-2024 school year and for which the HO found that the PRDOE denied DHM's right to a FAPE for the 2023-2024 school year.

93.    The proposed private school placement that plaintiffs sought in the administrative proceedings, Colegio Fundación Pequeño Campeón de Jesús in the Municipality of Manatí, still has space for DHM to be immediately enrolled for the 2024-2025 school year.

94.    However, for lack of funds DHM's parents cannot pay for DHM's enrollment at Colegio Fundación Pequeño Campeón de Jesús without a ruling directing the PRDOE to pay for his private school enrollment at public cost.

95.    The Colegio Fundación Pequeño Campeón de Jesús in the Municipality of Manatí has a special education classroom with a maximum of 5 students with one-to-one education and

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

grade level promotion available for DHM to be immediately enrolled for the 2024-2025 school
year.

96.     The school placement and LRE alternative offered to DHM by the Colegio
Fundación Pequeño Campeón de Jesús in the Municipality of Manatí is the least restrictive
environment for DHM for the 2024-2025 school year.

97.     The Colegio Fundación Pequeño Campeón de Jesús private school has a contract
with the PRDOE for the private placement at public cost of students from the agency's Special
Education Program valid and in force for the 2024-2025 school year.

98.     If this Honorable Court were to issue a preliminary injunction ordering that DHM
be placed in the Colegio Fundación Pequeño Campeón de Jesús private school while this judicial
review case is adjudicated, DHM would be immediately accepted and enrolled there and his
damages, lack of progress and regression would be immediately alleviated while this Court
receives the administrative case transcript and file and reviews the HO's resolution.

99.     As of this date the PRDOE has failed to prepare DHM a valid IEP for the 2024-
2025 school year.

100.    As of this date the PRDOE has failed to provide DHM with school placement in
the least restrictive environment for the 2024-2025 school year.

101.    As of this date the PRDOE is not providing DHM will all the related services that
have been recommended to him and he needs to receive a FAPE.

102.    The PRDOE is currently in violation of the IDEA for its failure to provide a FAPE
to DHM during the ongoing 2024-2025 school year.

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

## V.    ADMINISTRATIVE RESOLUTION SUBJECT TO JUDICIAL REVIEW

103.    On April 10, 2024, plaintiffs filed a due process complaint requesting, among other relief, that a hearing officer find that the PRDOE denied DHM's right to a FAPE during the 2023-2024 school year, that the PRDOE be ordered to hold a properly constituted IEP team meeting to amend the 2023-2024 IEP and to discuss several assessment reports that had been issued but were pending discussion and implementation by the agency, to prepare an IDEA-compliant 2024-2025 IEP and provide educational placement in the least restrictive environment for the 2024-2025 school year and to provide DHM with compensatory educational services for the time were he was deprived of a FAPE, and any other remedy that the HO deemed just and proper under federal and state law and regulations.

104.    The due process complaint was identified by the PRDOE as administrative case number QEE-2324-04-04-01353.

105.    The PRDOE assigned administrative case number QEE-2324-04-04-01353 to hearing officer Wilmarie Santoni-Cruz, Esq. for resolution.

106.    The evidentiary hearing (administrative trial) was held on July 8 and 15, 2024 before HO Santoni.

107.    Present for the PRDOE was its counsel, Mrs. Gina Jové-Matos, Esq.

108.    Plaintiffs' witnesses were DHM's mother, Mrs. Eira Martínez, psychologists Dr. Migdalia Santos and Dr. Nannette Negrón, and Mrs. Juleishka Meléndez-Marrero, Director of Colegio Fundación Pequeño Campeón de Jesús private school.

109.    Plaintiffs also submitted a total of 9 documents as evidence (marked as exhibits 1-

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

9) and an additional two documents that were not admitted as evidence by the HO, but were offered as evidence, and marked as complainant identifications 1 and 2.

110.    The PRDOE was declared in default due to its failure to file an answer to the administrative complaint.

111.    Although the PRDOE was in default and it had not filed a motion to notify its evidence as required by IDEA, and denying DHM's objections and opposition, the HO erred as matter of law by allowing the agency to present a witness, Special Education Facilitator Mr. Lino Elías, as a rebuttal witness who in fact acted as a normal witness and presented evidence outside of the scope of rebuttal.

112.    On July 30, 2024, HO Santoni issued a final resolution and order granting in part and denying in part the relief sought by plaintiffs in the administrative due process complaint.

113.    The resolution issued by HO Wilmarie Santoni-Cruz on July 30, 2024 contains multiple serious errors of law and omits several pertinent and important facts.

114.    The HO's resolution should be reversed because it is contrary to the IDEA federal law, Puerto Rico law, regulations, and case law.

115.    Upon reversing the HO's resolution, it is respectfully requested that defendants be ordered to provide DHM with all the remedy sought in the administrative due process complaint filed on April 10, 2024 in case number QEE-2324-04-04-01353, including the provision of an adequately drafted IEP for the 2024-2025 school year and the private placement at public cost of DHM in the Colegio Fundación Pequeño Campeón de Jesús private school for the entire 2024-2025 school year, and the multiple assessments, duly constituted IEP team meeting and

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

compensatory services requested therein.

116.    The PRDOE's multiple violations of DHM's procedural and substantive rights under the IDEA impeded DHM's right to a FAPE and deprived him of educational benefit.

117.    Consequently, plaintiffs are entitled to relief under IDEA's section 1415(f)(3)(E)(ii) and defendants should be held liable for providing compensatory services to DHM. See 20 U.S.C. § 1415(f)(3)(E)(ii). See also 34 C.F.R. § 300.513(a)(2).

118.    The PRDOE's multiple violations of DHM's procedural and substantive rights under the IDEA left DHM without a public-school alternative in the least restrictive environment for attending this 2024-2025 school year that commenced on August 12, 2024, therefore depriving DHM of the right to a FAPE.

119.    Defendants also breached DHM's procedural safeguards under IDEA's section 1415, 20 U.S.C. § 1415, and Puerto Rico law and the PRDOE's Special Education Services Manual by totally disregarding her rights to prior written notice with regards to the 2024-25 IEP, the June 20, 2024 IEP team meeting, the mandatory participants of such meeting and by negating DHM's parents right to meaningful participation in the IEP drafting process, IEP team meetings and in the determination of DHM's placement in the least restrictive environment for the 2024-25 school year.

120.    These severe procedural violations constitute a denial of DHM's right to a FAPE because, among other repercussions, they disallowed a meaningful participation in the drafting process of the IEP and on the June 20, 2024 IEP team meeting, incurred in predetermination of DHM's educational placement and violation of IDEA's LRE requirements, and resulted in the

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

PRDOE's failure to offer placement in the least restrictive environment for the 2024-25 school year. See Deal v. Hamilton County Bd. of Educ., 392 F.3d. 840, 855-59 (6th Cir. 2004) (holding that parents were entitled to tuition reimbursement based on two independent prejudicial procedural violations that resulted in a FAPE denial, fixed predetermination and repeated absence of general education teacher on IEP team meetings); Spielberg v. Henrico County Public Schools, 853 F.2d 256, 258-59 (4th Cir. 1988) (leading case on predetermination due to the school district's decision to change the disabled student's placement before developing an IEP).

121.    IDEA's section 1414(a)(2)(B) requires that for the PRDOE to receive federal funding under the Act, DHM had to be reevaluated "at least once every 3 years." See 20 U.S.C. § 1414(a)(2)(B).

122.    The PRDOE failed to administer DHM reevaluations within the 3-year period, although they were all needed as part of the multidisciplinary assessment process required by IDEA's section 1414(b), Id. at § 1414(b), to identify, among other, DHM's individual needs and level of academic performance, in the following areas/disciplines: autism, occupational therapy, psychometric, and socioemotional.

123.    The PRDOE also failed to administer DHM, in a timely fashion, evaluations needed as part of the multidisciplinary assessment process in all areas of suspected disability, as required by IDEA's section 1414(b)(3), Id. at § 1414(b)(3), in the following areas/disciplines: psychoeducational and assistive technology. See also 34 C.F.R. § 300.305.

## VI.    STANDARD OF REVIEW

124.    Under IDEA's section 1415(i)(2)(A), the district court reviews the administrative

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

record, which may be supplemented by additional evidence from the parties and makes an "independent ruling based on the preponderance of the evidence." <u>Roland M. v. Concord Sch. Comm.,</u> 910 F.2d 983, 989 (1st Cir. 1990) (<u>quoting</u> <u>Burlington v. Department of Educ.</u>, 736 F.2d 773, 790 (1st Cir. 1984)).

125.    It is by now well settled law in the First Circuit that under IDEA's section 1415(i)(2)(A) district courts should review questions of law de novo and findings of fact for clear error. <u>See</u> <u>Doe v. Newton Pub. Sch.</u>, 48 F.4th 42, 53-54 (1st Cir. 2022) (<u>citing</u> <u>Johnson v. Boston Pub. Schs</u>, 906 F.3d 182, 191 (1st Cir. 2018); <u>Doe v. Cape Elizabeth Sch. Dist.</u>, 832 F.3d 69, 76 (1st Cir. 2016)).

126.    In <u>Newton</u> the First Circuit clarified that, "where issues involve mixed questions of law and fact, we have employed a 'degree-of-deference continuum,' calling for 'non-deferential plenary review' of 'law-dominated questions' and more 'deferential review' where the questions are 'fact-dominated.'" <u>Newton Pub. Sch.</u>, 48 F.4th at 53 (<u>citing</u> <u>Cape Elizabeth</u>, 832 F.3d at 76-77 (<u>quoting</u> <u>Mr. I ex rel L.I. v. Me. Sch. Admin. Dist. No. 55</u>, 480 F.3d 1, 10 (1st Cir. 2007)).

127.    This intermediate level of review reflects the concern that courts not substitute their own notions of educational policy for that of the state agency, which has greater expertise in the educational arena. <u>Id.</u> (<u>citing</u> <u>Rowley</u>, 458 U.S. at 207).

128.    The District Court's role in addressing a challenge under the IDEA to an administrative ruling is an exercise of "involved oversight" of the agency's factual findings and conclusions. <u>Newton Pub. Sch.</u>, 48 F.4th at 53-54 (<u>citing</u> <u>S. Kingstown Sch. Comm. v. Joanna S.</u>, 773 F.3d 344, 349 (1st Cir. 2014) (<u>quoting</u> <u>Sebastian M. v. King Philip Reg'l Sch. Dist.</u>, 685 F.3d

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

79, 84 (1st Cir. 2012)).

129.    In accord with that role, the District Court must afford "due weight" to the determinations made in the administrative proceedings. Newton Pub. Sch., 48 F.4th at 54 (citing Lenn v. Portland Sch. Comm., 998 F.2d 1083, 1087 (1st Cir. 1993) (quoting Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982)).

130.    In judicially reviewing the administrative outcome, courts should make "independent decisions based on a preponderance of the evidence." Spielberg v. Henrico County Public Schools, 853 F.2d 256, 258 (4th Cir. 1988)(citing Rowley, 458 U.S. at 205, 20 U.S.C. § 1415(e)(2)). See also Newton Pub. Sch., 48 F.4th at 54; G.D. v. Swampscott Pub. Sch., 27 F.4th 1, 6 (1st Cir. 2022); 20 U.S.C. § 1415(i)(2)(C)(iii)).

## VII.    ISSUES PRESENTED FOR JUDICIAL REVIEW

131.    The resolution issued on July 30, 2024 by HO Santoni should be reversed because it is contrary to the IDEA federal law, Puerto Rico law, regulations and case law.

132.    The HO erred as a matter of law by denying the private placement cause of action without employing the two-pronged analysis established by U.S. Supreme Court in Bd. of Educ. v. Rowley, 458 U.S. 176, 206-07 (1982), and therefore disregarded the PRDOE's multiple severe procedural and substantive violations of the IDEA and state law, which resulted in the denial of DHM's right to a FAPE for the 2024-2025 school year. See also D.B. ex. Rel. Elizabeth B. v. Esposito, 675 F.3d 26, 34-35 (1st Cir. 2012).

133.    In Rowley, the Supreme Court established a two-prong analysis adjudicating a special needs student's administrative due process complaint under IDEA. First, the Court and/or

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

hearing officer must determine if the educational agency complied with the procedures established in the IDEA. Second, the Court and/or hearing officer must determine if the IEP developed in compliance with the procedures established in the Act was reasonably calculated to enable the child to receive educational benefit. Rowley, 458 U.S. at 207. See also Endrew F., 580 U.S. at 399-400 (clarifying that to comply with IDEA "the IEP must be reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances"); D.B. v. Esposito, 675 F.3d 26, 34 (1st Cir. 2012) (holding that "to comply with the IDEA, an IEP must be reasonably calculated to confer meaningful educational benefit.").

134.    If the HO would have performed the Rowley two-pronged analysis in adjudicating DHM's due process complaint, she would have identified the PRDOE's multiple severe procedural violations of the procedural safeguards provided in IDEA and state law to protect DHM's rights and facilitate the provision of a FAPE.

135.    If the HO would have performed the Rowley two-pronged analysis, she would have identified and considered the highly detrimental consequences of such procedural violations which amounted to a FAPE deprivation by completely disallowing DHM's mother from exercising her right to a meaningful participation in both the preparation of the 2024-2025 IEP and the May 16, 2024 and June 20, 2024 IEP team meetings. See 20 U.S.C. § 1415(c)(1) (prior written notice requirements); 34 C.F.R. §§ 300.322 (parent participation, notice requirements and copy of IEP to parents); 300.503 (requirements of prior notice by the public agency and its minimum contents); 300.504 (requirement of procedural safeguards notice).

136.    The HO also erred in ignoring the fact that DHM's mother did not have a

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

meaningful participation in the drafting of the May 16, 2024 and June 20, 2024 IEP team meeting

minutes, the 2024-2025 IEP, and the yearly decision of school placement in the LRE for the 2024-

2025 school year.

137.    The HO also erred in ignoring the fact that the PRDOE made highly important

decisions on DHM's placement and IEP for the 2024-2025 school year without his parents' input

and meaningful participation.

138.    These facts that were erroneously omitted by the HO evince the PRDOE's violation

of IDEA's regulations 300.116 and 300.322 requiring meaningful parent participation in the IEP

preparation, the IEP team proceedings and the educational placement decision. See 34 C.F.R. §§

300.116 (requiring that "[i]n determining the educational placement of a child with a disability…

each public agency must ensure that the placement decision is made by a group of persons,

including the parents, and other persons knowledgeable about the child, the meaning of

the evaluation data, and the placement options… [and that t]he child's placement… [i]s based on

the child's IEP."), 300.322 (meaningful parent participation requirement) See also Spielberg v.

Henrico County Public Schools, 853 F.2d 256, 259 (4th Cir. 1988) (recognizing the general rule

that the educational placement decision must be based on the IEP and holding that "[t]he decision

to place Jonathan at Randolph before developing an IEP on which to base that placement violates

this regulation as interpreted by the Secretary of Education. It also violates the spirit and intent of

the EHA [IDEA predecessor statute], which emphasizes parental involvement. After the fact

involvement is not enough.") (our emphasis).

139.    The HO also erred, as a matter of law, in determining that IDEA always requires

28

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

written notice by the parents of a special needs child as a requisite for allowing the private

placement at public cost when IDEA and its interpretative caselaw expressly allow for parents to

obtain a ruling compelling the agency's payment of the child's private school placement even in

the absence of such written notice. See Forest Grove Sch. Dist. v. T.A., 557 U.S. 230, 241 (2009)

(holding that IDEA's section 1412(a)(10)(C)(i) "statement that reimbursement is not authorized

when a school district provides a FAPE could be read to indicate that reimbursement is authorized

when a school district does not fulfill that obligation.")

140.    The HO also erred in finding no FAPE violation for the 2024-2025 school year

when the undisputed evidence demonstrated that the PRDOE failed to draft an IDEA-compliant

IEP and make an educational placement determination in the LRE prior to the expiration of the

state deadline on May 31, 2024.

141.    By omitting its duties to have an IDEA compliant IEP and then formally offering

at least one LRE public school alternative prior to the expiration of the state deadline on May 31,

2024 and to the commencement of the 2024-2025 school year, the PRDOE denied DHM's right

to a FAPE.

142.    The HO erred, as a matter of law, by ignoring precedent set forth by the US

Supreme Court IDEA section 1412(a)(10)(C)(i)'s "safe harbor explicitly bars reimbursement only

when a school district makes a FAPE available by correctly identifying a child as having a

disability and proposing an IEP adequate to meet the child's needs." Forest Grove, 557 U.S. at 241

(our emphasis). The Forest Grove further clarified that, "[i]ndeed, its statement that reimbursement

is not authorized when a school district provides a FAPE could be read to indicate that

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

reimbursement is authorized when a school district does not fulfill that obligation." Id. (our emphasis).

143.    IDEA requires the PRDOE to have an adequately prepared IEP in effect for each student registered in the Special Education Program "at the beginning of each school year." See 20 U.S.C. § 1414(d)(2)(A). See also Federal Register, Vol. 62, No. 204, p. 55127, § IV (Oct. 22, 1997) (answering the question of whether that IEP must be developed before or after placement and clarifying that IDEA "requires that an IEP be 'in effect before special education and related services are provided to a child' [and reiterating that] the appropriate placement for a particular child with a disability cannot be determined until after decisions have been made about the child's needs and the services that the public agency will provide to meet those needs. [Hence,] [t]hese decisions must be made at the IEP meeting, and it would not be permissible first to place the child and then develop the IEP. Therefore, the IEP must be developed before placement.")(emphasis added).

144.    The PRDOE failed to provide DHM with an appropriately drafted IEP for the 2024-25 school year, as per the requirements of IDEA's section 1414(d)(1)(A)(i), 20 U.S.C. § 1414(d)(1)(A)(i).

145.    As established in the binding judgment of the Rosa Lydia Vélez class action, state law es even more favorable to DHM by requiring that the PRDOE have in effect the IEP and provide a school setting alternative within 5 days prior to the conclusion of the school year, which in this case would have been prior to May 31, 2024. See Judgment issued on February 14, 2002, Rosa Lydia Vélez, et al. v. Aponte-Roque, et al., Case No. KPE 80-1738 (907) (February 14, 2002)

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

at 31, section D(2). See also PRDOE Manual of Special Education Procedures, July 2020 Edition, at 73, section 7.4(2).

146.    As per the applicable IDEA provisions, the child's IEP will be used by the educational agency to determine the potential educational placement of the child before the commencement of each academic year (usually in the months of April or May of each year). See 20 U.S.C. §§ 1401(9)(D), 1412(a)(5) and 1414(d).  See also 34 C.F.R. § 300.116(b)(2).

147.    Hence, IDEA requires that the PRDOE have in effect an adequately developed IEP for the child prior to the educational agency's proposal of one or more public schools as potential educational setting for the special needs child. See 20 U.S.C. § 1412(a)(5)(B)(establishing the educational agency's responsibility to assure the provision of "a free appropriate public education according to the unique needs of the child as described in the child's IEP."). See also Spielberg v. Henrico County Public Schools, 853 F. 2d 256, 259 (4th Cir. 1988) (holding that the "IEP objectives must be written before placement.").

148.    The PRDOE's omission of its duties to provide in a timely fashion with an IDEA compliant IEP and a school setting alternative where DHM could be afforded the educational and related services needed by his condition for the 2024-2025 school year resulted in a FAPE deprivation.

149.    Pursuant to precedent, DHM had a valid claim for private placement at public cost even though his parents did not inform in writing their intention to seek such placement. See Burlington v. Department of Ed. of Mass., 471 U.S. 359, 370 (1985) (holding that "[i]n a case where a court determines that a private placement desired by the parents was proper under the Act

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

and that an IEP calling for placement in a public school was inappropriate, it seems clear beyond cavil that 'appropriate' relief would include a prospective injunction directing the school officials to develop and implement at public expense an IEP placing the child in a private school."); Forest Grove, 557 U.S. at 241 (holding private placement reimbursement authorized when a school district does not fulfill its FAPE obligation).

150.    The HO erred by omitting the fact that, considering DHM's regression at school, lack of progress and regression in part to the agency's denial of a FAPE during the 2023-24 school year, as well as the agency and IEP team members failure to take remedial actions to address his difficulties and need for both amending the IEP, conducting additional assessments to ascertain his current level of academic performance and needs, and his fragile emotional state, DHM could not and should not have been maintained in the same classroom and school were the HO found that he had been denied a FAPE the previous year.

151.    In the absence of the PRDOE's timely compliance with its duties to have an adequate 2024-25 IEP in place and offer at least one specific public-school alternative in the least restrictive environment prior to the state May 31, 2024 deadline, as well as due to the FAPE deprivation for the previous 2023-24 school year, DHM's private school placement cause of action was valid.

152.    Having found that the PRDOE denied DHM a FAPE for the 2023-2024 school year, the HO erred by denying his private placement cause of action and allowing for his continued stay in the same school (Elemental Urbana) and placement (SEM routes 2-3 classroom) were he had just been deprived of a FAPE and were the overwhelming evidence demonstrated a total lack of

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

progress and severe academic and emotional regression.

153.    The HO also erred by omitting issuing findings of the undisputed facts that the PRDOE never issued DHM with prior written notice prior to the May 16, 2024 and June 20, 2024 IEP team meetings and that such violations deprived DHM's mother from having a meaningful participation in the 2024-2025 IEP drafting process and in the educational placement decision. See 20 U.S.C. § 1415(b), (d) (prior written notice requirement); 34 C.F.R. § 300.322 (meaningful parent participation requirement).

154.    The HO also erred by omitting issuing a finding of the undisputed fact that the PRDOE breached state law by not having an adequate 2024-2025 IEP prepared for DHM and a LRE school setting alternative by the May 30, 2024 state law deadline.

155.    Puerto Rico state law requires that the PRDOE have in effect the IEP and educational placement alternative within 5 days prior to the conclusion of the school year, which in this case was the 31st of May 2024. See Judgment issued on February 14, 2002, Rosa Lydia Vélez, et al. v. Aponte-Roque, et al., Case No. KPE 80-1738 (907) (February 14, 2002) at 31, section D(2). See also PRDOE's Manual of Special Education Procedures, July 2020 Edition, at 73, section 7.4(2).

156.    Because the PRDOE waited until May 16, 2024 to hold the IEP team meeting for preparing the initial draft of DHM's 2024-2025 IEP, only 11 working days prior to the state law deadline, the agency (and not plaintiffs) is solely responsible for its failure to comply with both state and federal law in this case.

157.    The HO erred by disregarding the testimony of Mrs. Martínez and of the evaluating

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

psychologists, doctors Migdalia Santos and Nannette Negrón, and providing total credibility and almost expert witness status to the PRDOE's purported rebuttal witness, Special Education Services Facilitator, Mr. Lino Elías, who among other shortcomings had no personal knowledge of DHM's needs, had never seen him, taught him, supervised him or assessed him in any way.

158.    The HO should not have allowed the PRDOE to present Mr. Elías as a rebuttal witness because it of the default entry and, even if it could be allowed, his testimony should have been limited greatly and reduced pursuant to plaintiffs repeated and timely written (via motion in advance) and oral objections.

159.    Instead, the HO overruled plaintiffs timely and well supported objections and erred by allowing the PRDOE to use Mr. Elías as a regular witness to present its case in chief thereby practically leaving without consequence the default entry and allowing the agency to evade the consequences of violating IDEA's section 1415(c)(2)(B)(i)(I) ten (10) day deadline for the filing of the agency's answer to the administrative complaint and IDEA's section 1415(f)(2)(A) requirement for notification of all evidence "not less than 5 business days prior to the hearing" subject to the hearing officer disallowing the party that fails to comply with subparagraph (A) "from introducing the relevant evaluation or recommendation at the hearing without the consent of the other party." See 20 U.S.C. § 1415(c)(2)(B)(i)(I), 1415(f)(2)(A), (B).

160.    The HO also erred by completely failing to evaluate and analyze the 2024-2025 IEP contents and evaluating whether it was procedurally and substantively IDEA compliant. See Town of Burlington v. Department of Education, Commonwealth of Massachusetts, 736 F.2d 773 (1st Cir. 1984) (noting that "[t]he ultimate question for a court under the Act is whether a proposed

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

IEP is adequate and appropriate for a particular child at a given point in time."), aff'd 471 U.S.

359 (1985).

161.    As recognized by the U.S. Supreme Court, "[t]o meet its substantive obligation

under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make

progress appropriate in light of the child's circumstances" and such IEP "is constructed only after

careful consideration of the child's present levels of achievement, disability, and potential for

growth." Endrew F., 580 U.S. at 399-400 (citing §§1414(d)(1)(A)(i)(I)-(IV), (d)(3)(A)(i)-(iv)).

162.    By failing to analyze the contents of the 2024-2025 IEP prepared by the PRDOE

on May 16, 2024 and signed under duress by Mrs. Martínez on May 23, 2024, the HO omitted

identifying and issuing a finding of both fact and law of its uncontested inadequacy due to, among

other deficiencies, to the lack of "a statement of the child's present levels of academic achievement

and functional performance, including… (aa) how the child's disability affects the child's

involvement and progress in the general education curriculum…" as required by IDEA's section

1414(d)(1)(A)(i)(I)(aa). See also Deal v. Hamilton County Bd. of Educ., 392 F.3d. 840, 853 (6th

Cir. 2004) (holding that "as part of providing a FAPE, school districts receiving funds under the

IDEA are required to establish an IEP for each child with a disability" and that "the IEP must

'contain a specific statement of the child's current performance levels, the child's short-term and

long-term goals, the educational and other services to be provided, and criteria for evaluating the

child's progress.'").

163.    By failing to analyze the contents of the 2024-2025 IEP prepared by the PRDOE

on May 16, 2024 and signed under duress by Mrs. Martínez on May 23, 2024, the HO omitted

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

identifying and issuing a finding of both fact and law of its uncontested inadequacy due to, among

other deficiencies, to the lack of "a statement of measurable annual goals, including academic and

functional goals, designed to" both "meet the child's needs that result from the child's disability

to enable the child to be involved in and make progress in the general education curriculum;" and

"meet each of the child's other educational needs that result from the child's disability," as required

by IDEA's section 1414(d)(1)(A)(i)(II)(aa-bb).

164.    By failing to analyze the contents of the 2024-2025 IEP prepared by the PRDOE

on May 16, 2024 and signed under duress by Mrs. Martínez on May 23, 2024, the HO omitted

identifying and issuing a finding of both fact and law of its uncontested inadequacy due to, among

other deficiencies, to the lack of "a statement of the special education and related services and

supplementary aids and services…" "to advance appropriately toward attaining the annual goals"

and "to be involved in and make progress in the general education curriculum," as required by

IDEA's section 1414(d)(1)(A)(i)(IV)(aa-bb).

165.    The HO also erred by omitting issuing a finding of the undisputed fact that the

PRDOE never adequately constituted the June 20, 2024 IEP team meeting because it failed to have

a special education teacher knowledgeable of DHM's needs present.

166.    Contrary to IDEA's minimum personnel requirements, an individual with personal

knowledge of DHM's needs, such as his special education teacher, was not present at the June 20,

2024 IEP team meeting. See 20 U.S.C. § 1414(d)(1)(B)(iv). This omission resulted in the

PRDOE's failure to make an educational placement determination and offer school alternatives in

the LRE for DHM for the 2024-2025 school year.

36

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

167.    The HO also erred by omitting issuing a finding of fact of the undisputed fact that the PRDOE ignored DHM's evident regression and diminishing results during the 2023-2024 school year and failed to either amend the 2023-2024 IEP, conduct in a timely basis the needed assessments to evaluate his educational and emotional state and needs, among other, and opted to force DHM's mother to accept the proposed 2024-2025 IEP that was submitted without prior written notice, without the parents meaningful participation, and prepared without having assessed the student in all areas of suspected disability as required by IDEA in section 1414(b)(3)(B), among other severe procedural and substantive violations of IDEA and state law that resulted in depriving DHM of a FAPE for both the 2023-24 and 2024-25 school years.

168.    The HO also erred by omitting a finding of the undisputed fact that the PRDOE failed to comply with IDEA's section 1414(d)(1)(A)(i)(III) requirement of issuing DHM's parents with "periodic reports on the progress the child is making toward meeting the annual goals (such as through the use of quarterly or other periodic reports, concurrent with the issuance of report cards)" during the 2023-2024 school year were DHM's was having serious performance and behavioral difficulties at school and was evincing a clear and marked regression, lack of progress and diminishing results.

169.    The HO also erred by omitting a finding of the undisputed fact that the PRDOE never issued DHM a public-school alternative prior to the expiration of the state deadline on May 31, 2024.

170.    Although she correctly concluded that DHM had been denied a FAPE for the 2023-2024, the HO erred by providing adequate and actionable relief to DHM and instead opted to

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

delegate the decision on the compensatory and equitable relief to the IEP team meeting.

171.    The HO decision to abstain from providing equitable relief and compensatory educational services to DHM and instead delegate this decision to the IEP team is a serious error of law. See 20 U.S.C. § 1415(b)(6)(A) (IDEA procedural safeguard providing the child and the state educational agency "[a]n opportunity for any party to present a complaint with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."), 1415(i)(2)(C)(iii)(IDEA provision allowing for equitable considerations in fashioning relief for a FAPE deprivation). See also Florence Cty. Sch. Dist. Four v. Carter, 510 U.S. 7, 15-16 (1993)(holding that "once a court holds that the public placement violated IDEA, it is authorized to 'grant such relief as the court determines is appropriate.'"); Arroyo-Delgado v. Department of Education of P.R., 199 F. Supp. 3d 548, 555 (D.P.R. 2016) (recognizing the importance of "[c]ompensatory education [which] would allow AGA to 'catch-up' on learning objectives that he may not have mastered in a potentially suboptimal learning environment [and that e]ach day that he is not catching up, he remains at a diminished developmental level and also forgoes opportunities to build on the knowledge that he should have already obtained."), Id. at note 4 (noting that "A compensatory education award must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place.")(citing 67B Am. Jur. 2d Schools§ 430 (2016), Mary McLeod Bethune Day Acad. Pub. Charter Sch. v. Bland, 555 F.Supp. 2d 130, 134-36 (D.D.C.2008)).

172.    IDEA's section 1415 does not allow for the HO to delegate its adjudicative power

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

and authority to an IEP team that is governed and controlled by the PRDOE, and were the evidence presented demonstrated that DHM's parents were provided no meaningful participation and were PRDOE personnel such as Mr. Lino Elías could unilaterally predetermine the child's educational placement and reject both the parents objections and pleads for adequate placement in the LRE and for amendments to the IEP, as well as predetermine and unilaterally reject the educational placement in the LRE setting recommendations made by DHM's psychologists (both of whom testified in the administrative trial and whose testimony was improperly dismissed by the ALJ in favor of the agency's rebuttal witness, Mr. Elías, who predetermined DHM's placement decision in the June 20, 2024 IEP team meeting).

173.    The HO also erred by falling short from finding a FAPE violation for the 2024-2025 school year by simply concluding that some of the remedies sought in the underlying complaint were partially provided without adjudicating and/or addressing all controversies and relief sought in the underlying due process complaint as required by IDEA's section 1415(f)(3)(E).

174.    Specifically, the HO omitted adequately adjudicating and providing relief to DHM pursuant to IDEA's section 1415(f)(3)(E) for the first, fourth, fifth, sixth and seventh remedies or causes of action brought in the administrative due process complaint.

175.    The HO also erred by omitting to adjudicate all controversies and relief sought in the underlying due process complaint procedure in the light most favorable to DHM as a special needs student, as expressly required by article 15 of Letter of Rights of Special Needs Individuals of Puerto Rico, 1 Laws of P.R. Ann. § 512k.

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

## VIII.   FIRST CAUSE OF ACTION:
## JUDICIAL REVIEW AND REVERSAL OF HO'S RESOLUTION

176.    Plaintiffs re-allege and incorporate paragraphs 1 thru 175 of this verified complaint.

177.    IDEA's section 1415(i) allows for this Honorable Court to grant in judicial review any relief that it deems appropriate. See 20 U.S.C. §§ 1403,1415(i)(2)-(3). See also 34 C.F.R. §§ 300.516-517.

178.    Plaintiffs respectfully request that this Honorable Court perform a judicial review and reverse the HO's resolution as contrary to IDEA and state law and order defendants to provide DHM with all the relief sought in the administrative due process complaint and compensatory educational and related services under IDEA's section 1415(f)(3)(E)(ii) for any additional related services lost during the pendency of this litigation. See 20 U.S.C. § 1415(f)(3)(E)(ii). See also 34 C.F.R. § 300.513(a)(2).

179.    Via preliminary injunction or upon reversing the HO's resolution, plaintiffs request that the PRDOE be ordered to immediately enroll at public cost DHM in the Colegio Fundación Pequeño Campeón de Jesús private school for the 2024-2025 school year and until the conclusion of this judicial review action. Arroyo-Delgado, 199 F. Supp. 3d at 556 (recognizing that "courts have found that one school year is too short a time to litigate fully an IEP dispute.")(citing Bd. of Educ. v. Rowley, 458 U.S. 176, 186 n. 9 (1982)(allowing challenge to past IEP after school year had ended, noting "[j]udicial review invariably takes more than nine months to complete")). See also Rome Sch. Comm. v. Mrs. B., 247 F.3d 29, 31 (1st Cir.2001) (quoting Daniel R.R. v. State Bd. of Educ., 874 F.2d 1036, 1041 (5th Cir.1989) (finding that IEP "controversies are likely to

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

evade review because the 'administrative and judicial review of an IEP is 'ponderous' and usually will not be complete until a year after the IEP has expired.'").

180.    Upon reversing the HO's resolution, plaintiffs request that the PRDOE be ordered to evaluate DHM in all areas of suspected disability and to perform reevaluations in any outdated evaluations to, among other, adequately identify his individual needs, emotional state, and current level of academic performance, and to discuss all such evaluation reports in a duly constituted IEP team meeting with prior written notice.

181.    Upon reversing the HO's resolution, plaintiffs request that the PRDOE be ordered to provide DHM with an adequately drafted and IDEA compliant IEP for the 2024-2025 school year.

### IX.    SECOND CAUSE OF ACTION:
### REQUEST FOR ORDER FOR DEFENDANTS' SUBMITTAL OF A CERTIFIED TRANSLATED COPY OF THE ADMINISTRATIVE DUE PROCESS RECORD

182.    Plaintiffs re-allege and incorporate paragraphs 1 thru 181 of this verified complaint.

183.    As a procedural safeguard intended to protect DHM's rights, IDEA's section 1415(i)(2)(C)(i) requires that this Court receive the administrative proceedings records from the state educational agency. See 20 U.S.C. § 1415(i)(2)(C)(i) ("In any action brought under this paragraph, the court (i) shall receive the records of the administrative proceedings.").

184.    The state educational agency's duty to elevate a written record of the hearing proceedings is an express obligation imposed by the IDEA to the state educational agency, the PRDOE. See 20 U.S.C. §§ 1415(i)(2)(C), (h)(3).

185.    The PRDOE has exclusive control and custody of the administrative proceedings,

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

and as part of its obligations under IDEA it is responsible for submitting the administrative record

to this Court to allow for the judicial review of the HO's decision.

186.    It shall also be noted that in Puerto Rico it is the DOE who designates, contracts,

monitors, and pays for the hearing officers who preside over IDEA due process proceedings.

187.    In Torres-Serrant v. Department of Education of P.R., 100 F. Supp. 3d 138 (D.P.R.

2015), this District Court found the PRDOE liable for all expenses of translating from Spanish to

English the relevant portions of the administrative record to allow for the judicial review under the

IDEA. See also Morales v. Puerto Rico Department of Education, Civil No. 04-cv-1760 (JAD),

NH Civil No. 05-DS-114-JD (May 31, 2006)(J. DiClerico) (holding that "[t]he Puerto Rico

Department of Education is the responsible agency" for translating the administrative records from

Spanish to English in an IDEA judicial review case); Rivera-Rodríguez v. Commonwealth of P.R.,

Civil No. 13-cv-1599 (ADC/MEL), Order issued on September 20, 2013 (docket no. 12) (ordering

defendants "to submit a complete record of the administrative proceedings, including any written

transcripts of the hearing(s).").

188.    Pursuant to IDEA's section 1415(i)(2)(C) and the aforecited case law, plaintiffs

respectfully request that this Honorable Court order defendants to submit a certified copy of the

duly translated administrative proceedings record, including the hearing transcripts, pleadings,

legal memoranda, and the documentary evidence presented in such hearings, within the shortest

timeframe deemed reasonable by the Court.

42

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

## X.    THIRD CAUSE OF ACTION:
## COMPENSATORY SPECIAL EDUCATION SERVICES

189.    Plaintiffs re-allege and incorporate paragraphs 1 thru 188 of this verified complaint.

190.    An appropriate remedy under the IDEA is to compel the educational agency to provide compensatory educational and/or related services to a student with disabilities. See C.G. v. Five Town Cmty. Sch. Dist., 513 F.3d 279, 290 (1st Cir. 2008)(holding that "[c]ompensatory education is a surrogate for the warranted education that a disabled child may have missed during periods when his IEP was so inappropriate that he was effectively denied a FAPE."); Pihl v. Mass. Dept. of Educ., 9 F.3d 184, 188-89 (1st Cir. 1993) (holding that "[c]ompensatory education is available to remedy past deprivations" and that if an IEP is found to be deficient IDEA "may require services at a future time to compensate for what was lost."); Mary McLeod Bethune Day Acad. Pub. Charter Sch. v. Bland, 534 F. Supp. 2d 109, 114-15 (D.D.C. 2008) (holding that "[w]here a school system fails to provide special education or related services to a disabled student, the student is entitled to compensatory education" and that "[u]nder the theory of compensatory education, courts and hearing officers may award educational services to be provided prospectively to compensate for a past deficient program.").

191.    Plaintiffs respectfully request that as equitable relief and compensatory education for the denial of DHM's right to a FAPE during the 2023-2024 school year that the HO found and concluded in the resolution under review, this Honorable Court orders DHM's immediate enrollment at public cost in the Colegio Fundación Pequeño Campeón de Jesús private school for the 2024-2025 school year until the conclusion of this judicial review action.

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

192.    The PRDOE failed to offer DHM with the special education and related services he needs under the provisions of the IDEA for the 2023-2024 and 2024-2025 school years and the HO erred by failing to grant the compensatory education and equitable remedies that he requires for the time that he has been deprived of a FAPE due to, among other serious procedural and substantive violations of the IDEA, the agencies failure to provide adequate IEP in a timely fashion, school setting in the LRE, daily minimum of six hours of educational services, and his much needed assessments and related and supplemental services.

193.    Since DHM currently is and will continue to be denied a FAPE until this Honorable Court reverses the HO's resolution and orders defendants to provide him with all the relief sought in the administrative complaint, plaintiffs respectfully request that all educational and related services that have been improperly denied to DHM during the past two years be added to the compensatory educational and related services award requested herein.

## XI.    FOURTH CAUSE OF ACTION:
## ATTORNEY'S FEES AND COSTS

194.    Plaintiffs re-allege and incorporate paragraphs 1 thru 193 of this verified complaint.

195.    IDEA's section 1415(i)(3)(B)(i)(I) allows for a federal district court to award attorney's fees to the parents or guardian of a child with a disability who is the prevailing party in an administrative or judicial proceeding. See 20 U.S.C. § 1415 (i)(3)(B)(i)(I). See also 34 C.F.R. § 300.517(a)(1)(i) (2010).

196.    Plaintiffs are currently partial prevailing parties in the captioned case, and therefore suited for partial payment of their attorney's fees and costs.

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

197.    If plaintiffs emerge as prevailing parties in the captioned case, it is respectfully requested that this Honorable Court award all the attorney's fees and costs incurred in the present litigation and in the preceding due process proceedings.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs respectfully request that this Honorable Court enter judgment in their favor, granting the following relief against defendants:

1.  A preliminary injunction ordering defendants to immediately enroll minor DHM, at public cost, in the Colegio Fundación Pequeño Campeón de Jesús private school for the 2024-2025 school year until at least the conclusion of this judicial review action;

2.  A declaration that defendants have violated plaintiffs' federal rights under the IDEA;

3.  Judicial review and an order reversing the resolution issued by HO Wilmarie Santoni-Cruz on July 30, 2024 in administrative case number QEE-2324-04-04-01353 and ordering defendants to provide DHM with all the special education services and compensatory services and equitable relief sought in the administrative due process complaint and in this verified complaint;

4.  A permanent injunction enjoining defendants from depriving or interfering with plaintiffs' federal rights;

5.  Award plaintiffs with the attorney's fees and costs incurred in the administrative proceeding, plus all the additional fees, costs, and expenses spent in the prosecution of this action;

6.  Grant any such other and further relief "as the court determines is appropriate" within

Verified Complaint for Judicial Review and for Preliminary and Permanent Injunction
Case No. 24-cv-1367

its "broad discretion." <u>Carter</u>, 510 U.S. at 15-16.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 16th day of August 2024.

*s/ Francisco J. Vizcarrondo Torres*
Francisco J. Vizcarrondo-Torres
USDC No. 221714
PO Box 270302
San Juan, P.R. 00928-3102
Tel: 787-296-9521
fvizcarrondo@fjvtlaw.com
www.fjvtlaw.com